UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

RAYMOND K. RUNIONS,

                Plaintiff,

    v.                                 **DECISION AND ORDER**
                                       **04-CV-01016**

JOANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

1.      Plaintiff Raymond K. Runions challenges an Administrative Law Judge's ("ALJ") determination that he is not entitled to disability insurance benefits ("DIB") under the Social Security Act ("the Act"). Plaintiff alleges he has been disabled since July 14, 2002, because of pain and limitations from a back condition. Plaintiff met the disability insured status requirements of the Act at all times pertinent to this claim.

2.      Plaintiff filed an application for DIB on June 12, 2003. His application was denied initially and, under the prototype model of handling claims without requiring a reconsideration step, Plaintiff was permitted to appeal directly to the ALJ. See 65 Fed. Reg. 81553 (Dec. 26, 2000). Pursuant to Plaintiff's request, an administrative hearing was held on January 15, 2004, before ALJ William T. Vest, at which time Plaintiff, his attorney, and a vocational expert (VE) appeared. The ALJ considered the case *de novo*, and on March 22, 2004, issued a decision finding that the Plaintiff was not

disabled.  On July 2, 2004, the Appeals Council denied Plaintiff's request for review.

      3.      On August 27, 2004, Plaintiff filed a Civil Complaint challenging Defendant's final decision and requesting the Court review the decision of the ALJ pursuant to Section 205(g) and 1631(c) (3) of the Act, modify the decision of Defendant, and grant DIB benefits to Plaintiff.[1]  The Defendant filed an answer to Plaintiff's complaint on November 4, 2004, requesting the Court dismiss Plaintiff's complaint.  Plaintiff submitted a Memorandum of Law in support of Plaintiff's request for review of the ALJ's unfavorable determination of employment disability on January 20, 2005.  On April 6, 2005, Defendant filed a Memorandum of Law in Support of the Defendant's Motion for Judgment on the Pleadings[2] pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  After full briefing, this Court deemed oral argument unnecessary and took the motions under advisement.

      4.      A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  <u>See</u> 42 U.S.C. § 405(g), 1383 (c)(3); <u>Wagner v. Sec'y of Health and Human Servs.</u>, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if it is not supported by substantial evidence or there has been a legal error. <u>See</u>  <u>Grey v. Heckler</u>, 721 F.2d 41, 46 (2d Cir. 1983); <u>Marcus v. Califano</u>, 615

---

[1] The ALJ's March 22, 2004, decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

[2] Although no motion for judgment on the pleadings was filed, the moving party was excused from such filing under Northern District General Order No. 18, which states in part: "The Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings…"

F.2d 23, 27 (2d Cir. 1979).  "Substantial evidence" is evidence that amounts
to "more than a mere scintilla," and it has been defined as "such relevant
evidence as a reasonable mind might accept as adequate to support a
conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427,
28 L. Ed. 2d 842 (1971).  Where evidence is deemed susceptible to more
than one rational interpretation, the Commissioner's conclusion must be
upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5.      "To determine on appeal whether the ALJ's findings are supported
by substantial evidence, a reviewing court considers the whole record,
examining evidence from both sides, because an analysis of the substantiality
of the evidence must also include that which detracts from its weight."
Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If
supported by substantial evidence, the Commissioner's finding must be
sustained "even where substantial evidence may support the plaintiff and
despite that the court's independent analysis of the evidence may differ from
the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y.
1992).  In other words, this Court must afford the Commissioner's
determination considerable deference, and may not substitute "its own
judgment for that of the [Commissioner], even if it might justifiably have
reached a different result upon a *de novo* review."  Valente v. Sec'y of Health
and Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6.      The Commissioner has established a five-step sequential
evaluation process to determine whether an individual is disabled as defined

under the Social Security Act.  See 20 C.F.R. § 404.1520, 416.920.  The

United States Supreme Court recognized the validity of this analysis in Bowen

v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119

(1987), and it remains the proper approach for analyzing whether a claimant

is disabled.

       7.     This five-step process is detailed below:

> First, the [Commissioner] considers whether the claimant is currently
> engaged substantial gainful activity.  If he is not, the [Commissioner]
> next considers whether the claimant has a "severe impairment" which
> significantly limits his physical or mental ability to do basic work active-
> ties.  If the claimant has such an impairment, the third inquiry is whether,
> based solely on medical evidence, the claimant has an impairment
> which is listed in Appendix 1 of the regulations.  If the claimant has
> such an impairment, the [Commissioner] will consider him disabled with-
> out considering vocational factors such as age, education, and work
> experience; the [Commissioner] presumes that a claimant who is
> afflicted with a "listed" impairment is unable to perform substantial gain-
> ful activity.  Assuming the claimant does not have a listed impairment,
> the fourth inquiry is whether, despite the claimant's severe impairment,
> he has the residual functional capacity to perform his past work.  Finally,
> if the claimant is unable to perform his past work, the [Commissioner]
> then determines whether there is other work which the claimant could
> perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also

Rosa v. Callahan, 168 F.3d 72,77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

       8.     While the claimant has the burden of proof as to the first four steps,

the Commissioner has the burden of proof on the fifth and final step.  See

Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir. 1984).

The final step of this inquiry is, in turn, divided into two parts.  First, the

Commissioner must assess the claimant's job qualifications by considering

his physical ability, age, education, and work experience.  Second, the

Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9.      In this case, the ALJ made the following findings with regard to factual information as well as the five-step process set forth above: (1) Plaintiff met the disability insured status requirements of the Act on July 14, 2002, the alleged onset date, and has acquired sufficient quarters of coverage to remain insured through at least December 31, 2007(R. at 21);[3] (2) Plaintiff has not engaged in substantial gainful activity since the alleged onset date (R. at 21); (3) The medical evidence established that Plaintiff suffers from degenerative disc disease of the lumbar spine, and he is status post fusion at L2-L3.  These are considered to be "severe" impairments within the meaning of the Regulations (R. at 21); (4) Those medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4 (R. at 21); (5) Plaintiff's assertions concerning  his pain and limitations are not totally credible for the reasons set forth in the body of the decision (R. at 21); (6) Plaintiff retains the residual functional capacity to perform a range of sedentary work.  The ALJ concluded Plaintiff is capable of lifting and carrying 10 pounds occasionally.  In an 8-hour workday, Plaintiff is capable of sitting 6 hours, and standing and/or walking 2 hours.  He must be afforded the opportunity to periodically alternate sitting and standing positions to relieve pain or discomfort, and is precluded from

---

[3] Citations to the underlying administrative are designated as "R."

engaging in work activities that require him to push and/or pull.  The ALJ further concluded that Plaintiff has non-exertional limitations that narrow the range of work he is capable of performing.  Plaintiff is precluded from bending, stooping, crouching, crawling, and climbing.  Plaintiff is further precluded from working at unprotected heights or around dangerous machinery (R. at 21); (7) Plaintiff is unable to perform the requirements of his past relevant work (R. at 21);  (8) Plaintiff was 41 years old on his alleged onset date, and he is currently 42 years of age, which is defined as a "younger individual ages 18-44" within the meaning of the Regulations (20 C.F.R. § 404.1563) (R. at 21);  (9) Plaintiff has a high school education (R. at 21);  (10) Although Plaintiff's non-exertional limitations do not allow him to perform the full range of sedentary work, using the Medical-Vocational Rule 201.29 as a framework for decision making, there are a significant number of jobs in the national economy that Plaintiff is capable of performing.  Examples of such jobs include work at the unskilled sedentary level as a shipping clerk and a production clerk.  Plaintiff is also capable of performing the following jobs at the semi-skilled level: desk security guard, dispatcher, and assembler (R. at 21-22);  and (11) Plaintiff has not been under a "disability," as defined in the Social Security Act, at any time through the date of the ALJ's decision (R. at 22).  Accordingly, the ALJ determined Plaintiff was not entitled to a period of disability, or disability insurance benefits, under Sections 216(i) and 223, respectively, of the Social Security Act (R. at 22).

10.     Plaintiff challenges the ALJ's determination that Plaintiff is not disabled and asserts the ALJ's decision is not supported by the substantial evidence of record.  Specifically Plaintiff alleges that (1) the ALJ disregarded the opinions of Plaintiff's treating sources and substituted his own lay opinion for that of Plaintiff's physicians, (2) the ALJ did not consider the effects of Plaintiff's obesity on Plaintiff's ability to perform work related activity, (3) the ALJ disregarded Plaintiff's testimony concerning his pain and limitations, and (4) the ALJ did not consider Plaintiff's ability to work on a regular and continuing basis.  Each of Plaintiff's allegations will be addressed in sequence by the Court.

11.     Plaintiff's first challenge to the ALJ's decision is that he interjected his lay medical opinion and failed to consider  the opinions of Plaintiff's treating physicians, Doctors Louis Bonavita, Jr., and Richard Zogby.  In this regard, Plaintiff claims the reports and opinions of only non-examining, or non-treating, sources were considered by the ALJ when making his determination that Plaintiff was not disabled during the relevant time frame for his claim.  See Plaintiff's Brief, p. 10.  Although not expressly stated, this Court construes Plaintiff's argument as having two prongs: first, that the ALJ failed to properly apply the treating physician rule, and second, that the ALJ did not consider the entire record, but only the portion of the record that served to support his determination that Plaintiff was not disabled.  Thus, according to the Plaintiff, the ALJ's decision was not supported by the substantial evidence of record.

According to the "treating physician's rule,"[4] the ALJ must give controlling weight to the treating physician's opinion when the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record."  20 C.F.R. § 404.1527(d)(2); see also Green-Younger v. Barnhart, No. 02-6133, 2003 WL 21545097, at *6 (2d Cir. July 10, 2003); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000).

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances.  Under  C.F.R. § 404.1527(d)(1)-(6), the ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court.  See de Roman, 2003 WL 21511160, at *9 (citing C.F.R. § 404.1527(d)(2); see also Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998).

Having reviewed the evidence at issue, this Court detects no reversible error in the ALJ's treatment of the opinions of Plaintiff's treating physicians, Doctors Bonavita and Zogby.  Rather, the ALJ's decision reflects his extensive evaluation of all the medical evidence accumulated in the record

---

[4] "The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. SS 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No.03-Civ.0075(RCC)(AJP), 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

from the date of Plaintiff's alleged disability on July 14, 2002, through the date of his hearing before the ALJ on January 15, 2004 (R. 13-22).  The medical evidence includes treatment notes, evaluations of Plaintiff's progress, and test results (R. at 96-142). The opinion of Dr. Bonavita was inconsistent and unsupported by the record as a whole, as discussed below.  Moreover, the opinion of Dr. Zogby was *consistent* with the clinical and diagnostic finding of Plaintiff's other examining physicians.

Although early treatment records are not included in Plaintiff's medical record, Plaintiff claimed difficulty with his back beginning in 1984 (R. at 90, 97).  He underwent fusion surgery of the lumbar spine at L2-L3 with apparently good results (R. at 97, 104,105).  Plaintiff re-injured his back in 1995 when a chair in which he was sitting collapsed (R. at 90, 97).  He stated he was out of work for a week at that time (R. at 97).  From 1995 through June 11, 2003, the date Plaintiff submitted his Disability Report, he used conservative methods to relieve his pain, such as over-the-counter Tylenol, muscle relaxers, and the occasional use of a cane (R. at 65, 91, 92).

From the record, it is unclear when Plaintiff filed his worker's compensation claim for back injury, but it appears he had his first worker's compensation visit with Dr. Bonavita on April 22, 2002 (R. at 121).  At that time, the doctor noted low back pain of unknown origin.  Id.  The doctor diagnosed Plaintiff with acute chronic low back pain, and recommended conservative treatment including physical therapy, chiropractic treatment, muscle relaxers, and the application of moist heat.  Id.

Plaintiff was next seen by Dr. Bonavita on July 5, 2002 (R. at 120). Plaintiff reported severe back pain, spasms, and burning pain around the incision from his 1987 surgery. <u>Id</u>. The doctor diagnosed acute exacerbation of chronic low back pain, and recommended referral to a surgeon, muscle relaxers, and a possible referral to a pain clinic. <u>Id</u>. Dr. Bonavita put Plaintiff out of work for five days, and recommended a follow-up visit on July 10, 2002.

On July 10, 2002, Plaintiff reported his lower back was stiff, with occasional stabbing and burning pain, but the muscle spasms were not as intense (R. at 119). Dr. Bonavita again diagnosed acute exacerbation of chronic low back pain, and recommended a prescription pain reliever and continued use of a muscle relaxer. <u>Id</u>. The doctor noted Plaintiff declined physical therapy and referred him to a pain clinic. <u>Id</u>. Because Plaintiff's position as a corrections officer involved lifting, Dr. Bonavita put Plaintiff out of work for four weeks. <u>Id</u>.

Plaintiff followed up with Dr. Bonavita on August 28, 2002 (R. at 118). Plaintiff reported continued low back pain and muscle spasms. <u>Id</u>. Upon examination, the doctor noted bilateral tenderness in Plaintiff's lower back, limited spinal flexion and extension, and positive bilateral straight leg raising. <u>Id</u>. However, Dr. Bonavita also noted Plaintiff had full motor strength in his lower extremities, and normal deep tendon reflexes. <u>Id</u>. The doctor recommended that Plaintiff continue with a home exercise program, and take Tylenol for pain relief. <u>Id</u>. Dr. Bonavita put Plaintiff out of work for an additional six weeks. <u>Id</u>.

On October 15, 2002, Plaintiff was examined by Dr. W. David Ferraraccio (R. at 96-101).  After examination of Plaintiff and his medical records, the doctor opined that with respect to Plaintiff's back injury, he had no radicular symptoms, no neurologic deficit, and minimal degenerative changes (R. at 96).  The doctor assessed Plaintiff as having a mild degree of temporary partial disability, compatible with light duty limitations that would include the freedom to sit, stand, or change position depending on Plaintiff's level of discomfort.  The doctor opined Plaintiff could periodically lift 20 to 25 pounds, but should avoid bending, stooping, or twisting at the waist level (R. at 97).

At Plaintiff's next visit with Dr. Bonavita on October 22, 2002, the doctor again diagnosed chronic low back pain and noted Plaintiff reported his pain was decreased by changing positions (R. at 117).  The Plaintiff claimed the medications prescribed at his last visit were not working, and that he used a hot water bottle to relieve pain.  Id.  Upon examination, Dr. Bonavita noted bilateral tenderness in Plaintiff's lower back and spasms, and positive straight leg raising, but full motor strength and deep tendon reflexes in Plaintiff's lower extremities.  Id.  The doctor recommended that Plaintiff continue use of his medications, get an MRI, and remain off work for an additional four weeks. Id.

Plaintiff underwent an MRI examination of his lower spine on October 23, 2002 (R. at 139-140).  The radiologist noted post operative changes at the L2-L3 level, and mild diffuse annular bulges from the L1-L2

11

level through the L5-S1 level (R. at 140).  However, no focal HNPs or nerve root impingement was found.  Id.

On November 11, 2002, Plaintiff followed up with Dr. Bonavita to discuss the results of his MRI and possible treatment by soft tissue injection (R. at 116).  Upon examination, the doctor again noted bilateral tenderness in Plaintiff's lower back, limited flexion and extension, and positive straight leg-raising, but also full motor strength and deep tendon reflexes in Plaintiff's lower extremities.  Id.  The doctor recommended Plaintiff continue with conservative treatment including Tylenol and home exercises, and stay out of work until further evaluations were completed.  Id.

Plaintiff was next seen by Dr. Bonavita on January 2, 2003 (R. at 115).  Plaintiff's complaints, and the results of his physical exam, were essentially unchanged from prior visits.  Id.  Dr. Bonavita referred Plaintiff to Dr. Zogby and recommended Plaintiff stay off work until further notice.  Id.

Plaintiff was examined by Dr. Zogby on January 13, 2003 for a one-time surgical consultation (R. at 135-137).  The doctor noted, "Patient states the pain is between moderate and severe.  In general, the progression of the problem seems to be getting better" (R. at 135).  Upon examination, Dr. Zogby noted Plaintiff appeared to be in moderate pain, but exhibited normal station and gait with negative supine straight leg-raising bilaterally (R. at 136).  Plaintiff's motor, sensory, and reflex tests were normal.  Id.  Dr. Zogby concluded Plaintiff's pain was mechanical, rather than the result of a lesion from Plaintiff's prior surgery, and that he was not a surgical candidate.  Id.

The doctor recommended Plaintiff follow a conservative medication and treatment routine.  Id.   Dr. Zogby assessed Plaintiff as "temporarily totally disabled" for the purpose of returning to his work as a corrections officer (R. at 137).

Plaintiff followed up with Dr. Bonavita on February 11, 2003 (R. at 113).  Plaintiff's complaints, and the results of the doctor's examination, were essentially unchanged from prior visits.  Id.  Dr. Bonavita recommended continued conservative treatment and that Plaintiff stay out of work until he was re-evaluated in six weeks.  Id.

Plaintiff was seen by Dr. Bonavita again on March 21, 2003 (R. at 112).  Plaintiff's complaints, and the results of Dr. Bonavita's examination, were the same as during the prior visit.  Id.  Dr. Bonavita recommended that Plaintiff continue with Tylenol, a home exercise program, and remain out of work for eight more weeks.  Id.

On June 4, 2003, Plaintiff followed up with Dr. Bonavita (R. at 111).  While Plaintiff's complaints and the results of his physical examination were essentially unchanged from prior visits, his recommended treatment was that he was, "urged to apply for Social Security disability, file for judgment for permanent disability."  Id.

Plaintiff was consultatively examined by Dr. Berton Shayevitz on June 26, 2003 (R. at 105-108).   The doctor noted Plaintiff appeared to be in no acute distress (R. at 106).  Dr. Shayevitz found Plaintiff's gait and station to be normal, and noted that he walked on heels and toes without difficulty.

Id.  The doctor noted Plaintiff got on and off the examining table, and was able to rise from a chair, without difficulty.  Id.  Upon examination of Plaintiff's lower spine, the doctor found he had reduced forward flexion and extension, but no S1 joint or sciatic notch tenderness, spasm, scoliosis, or kyphosis in the lumbar spine (R. at 107).  Straight leg-raising to 90 degrees in the sitting position was negative for pain bilaterally, although straight leg-raising in the supine position was positive for pain at 35 degrees.  Id.  Dr. Shayevitz found Plaintiff had a normal range of hip motion, full range of motion in both knees, maximal strength in the proximal and distal muscles, and no muscle atrophy in the lower extremities (R. at 107-108).  Plaintiff's reflexes were physiologic and equal, with no joint effusion, inflammation, or instability (R. at 108).  Dr. Shayevitz also reviewed Plaintiff's x-ray taken on the day of examination (R. at 109).  The x-ray showed the heights of the vertebral bodies were maintained, and no spondylolisthesis or spondylolysis was present.  Id.  Plaintiff's disc space at L4-L5 was only minimally narrowed.  Id.

On July 8, 2003, State agency review physician, Dr. D. Welch, examined Plaintiff's medical records (R. at 122-127).  Dr. Welch assessed Plaintiff capable of performing the requirements of light work, and therefore able to return to his past relevant work as a corrections officer (R. at 123-124).  While Dr. Welch opined Plaintiff's allegations of pain were credible, he noted the medical evidence did not support the allegations of pain to the degree claimed by Plaintiff (R. at 126).

Dr. Bonavita completed a Treating Physician Questionnaire and Medical Assessment of Ability to do Work-Related Activities (Physical) on December 3, 2003 (R. at 128-133).  Dr. Bonavita assessed Plaintiff as being able to lift 10 pounds only occasionally, and never able to carry any weight (R. at 130).  He opined Plaintiff could sit, stand, and walk for one hour each during a workday, and noted Plaintiff must be able to change position every 15 minutes (R. at 132).   Dr. Bonavita claimed Plaintiff should never climb, stoop, crouch, kneel, or crawl, and could only occasionally balance.  Id.  He further restricted Plaintiff from working at heights or around moving machinery, or where temperature extremes or vibrations would be present (R. at 133).

No additional medical evidence was submitted into Plaintiff's record prior to his hearing with the ALJ on January 14, 2004, or the ALJ's decision on March 22, 2004.

Dr. Bonavita's opinion is inconsistent with the record in this case. As set forth in the regulations, an opinion that is not based on clinical findings will not be accorded as much weight as an opinion that is well-supported. See 20 C.F.R. § 404.1527(d)(3), 416.927(d)(3); see also Caneglosi v. Chater, No. 94 CV-2694, 1996 WL 663161, at *4 (E.D.N.Y. Nov. 5, 1996 (noting that "unsupported statements by a treating or other medical source that the claimant is disabled are not binding on the trier of fact and do not preclude a finding of non-disability").  It is equally well-settled that the less consistent an opinion is with the record as a whole, the less weight it is to be given.  See

C.F.R. § 404.1527(d)(4), 416.927(d)(4).  In this Court's view, the restrictive

assessment of Dr. Bonavita was clearly contradictory to the findings of other

examining physicians, including Doctors Zogby, Ferraraccio, ~~and~~ Shayevitz,

and the review by State agency review physician Dr. Welch.  As an example,

when Plaintiff was examined by Dr. Ferraraccio on October 15, 2002, the

doctor noted Plaintiff appeared to be in no acute discomfort, was ambulatory

with no limp, and got on and off the examining table without assistance (R. at

98).  While Plaintiff exhibited a "hyperactive response" to palpation of the

lower thoracic and lumbar areas of his spine and to the left and right

paraspinal muscles, he had no sciatic notch tenderness, and a full range of

extension without discomfort.  Id.  Plaintiff did report pain when asked to flex

forward more than 10 to 15 degrees.  Id.  Dr. Ferraraccio opined Plaintiff had

no radicular symptoms, no neurologic deficit, and minimal degenerative

changes in his spine (R. at 96).

       Dr. Ferraraccio's assessment is consistent with the assessment of

Dr. Zogby (R. at 102-104).  Dr. Zogby noted Plaintiff's gait and station were

normal, his supine straight leg test was negative bilaterally, and motor,

sensory, and reflex exams of both extremities were normal (R. at 103).  Dr.

Zogby noted some radiation of pain from Plaintiff's lumbar spine to his thighs,

but nothing distal to the knees (R. at 102).  The doctor opined Plaintiff's pain

was mechanical, and that Plaintiff was not a candidate for surgery.  Id.  Dr.

Zogby recommended Plaintiff continue his conservative treatment plan of

Tylenol and home exercise (R. at 103, 112-113).

Also consistent with the opinions of Doctors Ferraraccio and Zogby was the opinion of examining physician Dr. Shayevitz (R. at 105-108). Dr. Shayevitz noted Plaintiff appeared to be in no acute distress, and had a normal station and gait (R. at 106). Plaintiff could heel/toe walk without difficulty, get on and off the examining table without assistance, and rise from a chair without difficulty. Id. Upon examination, Dr. Shayevitz documented Plaintiff's limited forward flexion and tenderness from the lower thoracic through the lumbar spine area, but noted there was no S1 joint or sciatic notch tenderness, no spasm, and no scoliosis or khyphosis (R. at 106). Straight leg-raising in the sitting position was negative at 90 degrees, although positive from zero to 35 degrees in the recumbent position. Id. Dr. Shayevitz found no trigger points for pain. Id. The doctor noted Plaintiff had normal range of motion in his hips, full range of motion in his knees and ankles, full strength in proximal and distal muscles, no atrophy, and no sensory abnormality (R. at 108). Plaintiff's reflexes were physiologic and equal, with no joint effusion, inflammation, or instability. Id.

State agency review physician, Dr. D. Welch, examined Plaintiff's medical and diagnostic records and assessed Plaintiff's subjective complaints of pain and limitations as credible, but not to the degree alleged (R. at 126). Dr. Welch opined Plaintiff would be capable of performing the requirements of light work, but with some limitation on stooping and crouching (R. at 124).

The medical opinions of Plaintiff's treating physicians, Doctors Bonavita and Zogby, were considered along with the opinions of consultative

examiners, Doctors Ferraraccio and Shayevitz, and State agency review physician, Dr. Welch.  The ALJ recognized some divergence of opinion about the level of work activity of which Plaintiff might be capable, and considered both unrefuted objective findings, as well as Plaintiff's self-reported symptoms, as the most reasonable measure of determining Plaintiff's residual functional capacity (R. at 18).  While the ALJ found Plaintiff's allegations of totally debilitating pain and limitations not entirely credible, he gave Plaintiff the benefit of the doubt and afforded some weight to Plaintiff's subjective complaints to ensure his residual functional capacity was reduced to sedentary.  Id.

Based on the foregoing, this Court finds that it was not improper for the ALJ to consider the opinion of Plaintiff's treating physician Dr. Bonavita, but to ultimately predicate his disability determination on the objective medical results and consistent medical opinions contained in the record.  It is the sole responsibility of the ALJ to weigh all medical evidence and resolve any material conflicts in the record.  See Richardson v. Perales, 402 U.S. 389, 399, 91 S. Ct. 1420, 1426, 28 L. Ed. 2d 842 (1971).  Under the circumstances presented in this case, it cannot be said that the ALJ disregarded the medical evidence from Plaintiff's treating physicians concerning his level of disability and adopted the opinions of non-examining or non-treating sources.  Further, it cannot be said that the ALJ considered only the small portion of the record that supported his conclusion that Plaintiff was not under a disability during the relevant time frame for his claim.  Rather, the Court finds the ALJ afforded

less weight to the assessment of Dr. Bonavita, which was based largely on Plaintiff's subjective complaints, than he afforded the medical opinions that were consistent with the objective clinical findings in the record.

12.     Plaintiff's second challenge to the ALJ's decision is that the ALJ failed to consider the effects of Plaintiff's obesity in the sequential evaluation process either as a severe impairment by itself, or in combination with Plaintiff's back impairment.  (See Plaintiff's Brief, p. 8).  Plaintiff suggests this Court should reverse the Commissioner's decision in his case  to allow consideration of how Plaintiff's obesity impacts his ability to work.  Id.

Contrary to Plaintiff's assertion that the ALJ was explicitly required by the guidelines in SSR 02-1p to consider Plaintiff's obesity during the five-step sequential evaluation, the ALJ was required to consider only those impairments that Plaintiff claimed to have, or about which the ALJ received evidence.  See Rutherford v. Barnhart, 399 F.3d 546, 552-553 (3d Cir. 2005), citing Skarbek v. Barnhart, 390 F.3d 500, 504 (7th Cir. 2004); see also 20 C.F.R. 404.1512(a).  (". . .a remand is not required here because it would not affect the outcome of the case.  Rutherford never mentioned obesity as a condition that contributed to her inability to work, even when asked directly by the ALJ to describe her impairments.  So even if we assume – in accordance with common sense – that the administrative record's evidence of Rutherford's 5' 2" height and her weight of some 245 pounds sufficed to alert the ALJ that obesity could be a factor, Rutherford has not specified how that factor would affect the five-step analysis undertaken by the ALJ, beyond an

assertion that her weight makes it more difficult for her to stand, walk, and manipulate her hands and fingers.")  Id. at 553.

Plaintiff did not list obesity in his application for disability benefits, or in his request for a hearing before an ALJ (R. at 31, 45-47).  During his hearing, Plaintiff disclosed his height and weight when questioned by the ALJ, but did not assert his weight aggravated his back condition or was a factor in his disability claim (R. at 151).   While reports of Plaintiff's height and weight within his medical evidence put the ALJ on notice that Plaintiff was obese, no further information was contained in the medical evidence provided by either Plaintiff or his doctors that his weight contributed significantly to his back symptoms.   Thus, it can be assumed that while the ALJ did not explicitly consider Plaintiff's obesity as part of his decision, it was factored indirectly into his decision as part of the doctors' opinions and other evidence contained in the record.  See Skarbek v. Barnhart, 390 F.3d 500, 504 (7th Cir. 2004). ("Notably, Skarbek does not specify how his obesity further impaired his ability to work, but speculates merely that his weight makes it more difficult for him to stand and walk.  Additionally, the ALJ adopted the limitations suggested by the specialists and reviewing doctors, who were aware of Skarbek's obesity.  Thus, although the ALJ did not explicitly consider Skarbek's obesity, it was factored indirectly into the ALJ's decision as part of the doctors' opinions.")  Id.  Therefore, this Court finds the ALJ did not err when he assessed Plaintiff's impairments without an explicit consideration of his obesity.

13.    Plaintiff's third challenge to the ALJ's decision is that the ALJ disregarded Plaintiff's testimony regarding his pain and limitations.  <u>See</u> Plaintiff's Brief, p. 7-8.  The ALJ considered Plaintiff's subjective complaints of pain and afforded the complaints some weight in finding that Plaintiff was not disabled and retained the residual functional capacity for a limited range of sedentary work (R. at 18).  However, the ALJ noted in his decision that there were no objective findings to support Plaintiff's subjective complaints.  <u>Id</u>.  Thus, the ALJ found Plaintiff's allegations of totally debilitating pain and limitations not entirely credible.  <u>Id</u>.

Courts in the Second Circuit have determined pain is an important element in DIB and SSI claims, and pain evidence must be thoroughly considered.  <u>See</u> <u>Ber v. Celebrezze</u>, 333 F.2d 923 (2d Cir. 1994).  Further, if an ALJ rejects a claimant's testimony of pain and limitations, he or she must be explicit in the reasons for rejecting the testimony.  <u>See</u> <u>Brandon v. Bowen</u>, 666 F. Supp. 604, 609 (S.D.N.Y. 1997).

However, subjective symptomatology by itself cannot be the basis for a finding of disability.  A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged.  <u>See</u> 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529 (b), 416.929; SSR 96-7p; <u>Gernavage v. Shalala</u>, 882 F. Supp. 1413, 1419 (S.D.N.Y. 1995).  In this case, there is no question Plaintiff's lower back problem is a severe impairment, but his reported symptoms suggest a greater restriction of

function than would be indicated by the medical evidence in the record.  Thus, the ALJ considered Plaintiff's daily activities, the type and nature of the symptoms reported, the medication and other treatment Plaintiff used to alleviate his symptoms, and any other measures he used to relieve pain (R. at 14-18).  See 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 96-7p.  The ALJ's decision shows he reviewed Plaintiff's complaints of pain and other symptoms, but found the medical and other evidence did not corroborate Plaintiff's claim of disabling pain (R. at 17-18).

In sum, the Court finds the ALJ properly considered Plaintiff's pain and reported limitations, along with the medical and other evidence in the record, and further finds the totality of evidence does not substantiate Plaintiff's claim that his pain and other symptoms were disabling. Accordingly, the ALJ exercised his discretion to evaluate the credibility of Plaintiff's testimony, presented an explicit summary of his evaluation, and rendered an independent judgment regarding the extent of Plaintiff's subjective complaints based on the objective medical and other evidence (R. at 15-16).  See e.g. Mimms v. Sec'y of Health and Human Servs., 750 F.2d 180, 196 (2d Cir. 1984).

14.     Plaintiff's fourth challenge to the ALJ's decision is that the ALJ did not consider Plaintiff's ability to work on a regular and continuing basis.  See Plaintiff's Brief, p. 14-15.  However, Plaintiff's argument is based on acceptance of the restrictions placed on Plaintiff by Dr. Bonavita, and on acceptance of Plaintiff's self-reported pain and limitations.  Id.

As discussed in Section 11 above, the ALJ considered the medical evidence of Plaintiff's disability proffered by Dr. Bonavita, but found Dr. Bonavita's evidence and opinions to be based largely on Plaintiff's subjective reports, rather than on well-supported clinical and laboratory evidence (R. at 18). Dr. Bonavita's opinion of Plaintiff's physical capabilities differed significantly from the independent assessments and objective evidence proffered by Doctors Zogby, Ferraraccio, and Shayevitz.

In addition, the ALJ analyzed Plaintiff's credibility in Section 14 above, and while the ALJ accepted that Plaintiff had some pain and limitations resulting from his back impairment, Plaintiff's claim of total disability was not credible (R. at 18). Giving Plaintiff the benefit of the doubt, the ALJ determined Plaintiff was capable of performing a limited range of sedentary work, as opposed to the minimally restricted range of light duty work recommended by Doctors Ferraraccio and Welch (R. at 18, 96-97, 124).

The ALJ further secured the expertise of a vocational expert to assess the types of jobs available in the national and local economy that Plaintiff would be able to do, given his capacity for a limited range of sedentary work (R. at 18-20, 161-167).

Thus, this Court finds the ALJ properly analyzed the medical and other evidence in the record, and secured the testimony of a vocational expert, when determining Plaintiff could perform a limited range of sedentary work on regular and continuing basis.

16.     After carefully examining the administrative record, this Court finds substantial evidence supports the ALJ's decision in this case, including the objective medical evidence and supported medical opinions.  It is clear to this Court that the ALJ thoroughly examined the record, afforded appropriate weight to all the medical evidence, including Plaintiff's treating physicians, consultative examiners, and State agency medical consultant, and afforded Plaintiff's subjective claims of pain an appropriate weight when rendering his decision that Plaintiff is not disabled.  This Court finds no reversible error and further finding that substantial evidence supports the ALJ's decision, this Court will grant Defendant's Motion for Judgment on the Pleadings and deny Plaintiff's motion seeking the same.

IT IS HEREBY ORDERED, that Defendant's Motion for Judgment on the Pleadings is GRANTED.

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings is DENIED.

FURTHER, that the Clerk of the Court is directed to take the necessary steps to close this case.

SO ORDERED.

Dated:  October 21, 2007
Syracuse, New York

Victor E. Bianchini
United States Magistrate Judge

24